IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| INTERNATIONAL MUFFLER COMPANY d/b/a MAREMONT EXHAUST PRODUCTS, | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. __________ |
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO DISTRICT LODGE NO. 711 AND LOCAL LODGE NO. 2545 | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff International Muffler Company d/b/a Maremont Exhaust Products' ("Plaintiff," "IMCO," "Maremont" or the "Company") brings this action against the Defendants under the civil provisions of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* For its Complaint in this case, Plaintiff respectfully shows the Court as follows:

## NATURE OF THE CASE

On February 5, 2007, the International Association of Machinists and Aerospace Workers, AFL-CIO District Lodge No. 711 and Local Lodge No. 2545 (collectively the "Union") initiated an economic labor strike at Plaintiff's Loudon, Tennessee manufacturing facility. During the pendency of the strike, which has continued to the present time, Defendants and their agents, officers, members, and others acting in concert and cooperation with them, have engaged in multiple acts of domestic terrorism targeted at Plaintiff and its employees, suppliers and vendors. Defendants are associated with a racketeering enterprise that is engaged in

activities affecting interstate commerce and have conducted or participated in the conduct of the enterprise's activities through a pattern of racketeering activity, including criminal acts of attempted murder and arson. Such criminal acts constitute predicate acts for purposes of 18 U.S.C. §§ 1962(c) and subject Defendants to liability under RICO.

## PARTIES

1. Plaintiff is a Texas corporation licensed to do business in the State of Tennessee. Plaintiff operates a place of business on 2400 Maremont Parkway, in Loudon County, Tennessee.

2. Defendant IAM District Lodge No. 711 ("District Lodge 711") is an unincorporated association and maintains its offices at 1901 Lindell Avenue, Nashville, Tennessee 37203. District Lodge 711 is a "person" within the meaning of 18 U.S.C. § 1961(3) and § 1962(c).

3. Defendant IAM Local Lodge No. 2545 ("Local 2545") is an unincorporated association and maintains its offices at 405 Highland Avenue, Loudon, Tennessee 37774. Local 2545 is a "person" within the meaning of 18 U.S.C. § 1961 (3) and § 1962(c).

4. The Union is the certified collective bargaining agent of all hourly production employees at the Company's plant located in Loudon, Tennessee.

## JURISDICTION AND VENUE

5. This action is based upon violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., and arises out of the intentional criminal conduct engaged in and/or solicited by Defendants.

6. This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964. Venue is proper in this Court because the acts giving rise to this claim occurred in this judicial district.

## FACTS

7. Plaintiff manufactures and distributes automotive after-market exhaust products and accessories. Plaintiff operates a manufacturing and distribution facility in Loudon, Tennessee, which operates under the name Maremont Exhaust Products ("Maremont"). The Maremont facility employed approximately 330 individuals prior to the strike. Approximately 254 individuals were hourly production employees and were members of the bargaining unit represented by the Union.

8. On Monday, February 5, 2007, at 12:01 a.m., the collective bargaining agreement between Maremont and the Union expired.

9. On February 5, 2007, at 12:01 a.m., the Union called a strike against Plaintiff, and picket lines were established in front of Plaintiff's business on Maremont Parkway.

10. The strike has continued since February 5, 2007. Few of Plaintiff's approximately 254 bargaining unit employees have returned to work since the strike began.

11. Since the initiation of the strike, Union business agents, officers and members along with their supporters in the community, including family and friends of the strikers, have engaged in a pattern of violence and domestic terrorism. Upon information and belief, the purpose is to terrorize Maremont non-striking workers, permanent replacement employees, vendors, customers, and contractors to either cease working for Maremont or doing business with Maremont with the intent to force the Maremont plant to close.

## PREDICATE ACTS

### Event 1 – Bomb Threat at the Maremont Plant

12. On February 15, 2007 at approximately 10:30 a.m., a bomb threat was made to the Maremont plant which caused the plant to be evacuated and for production to cease for approximately two hours while law enforcement personnel searched for a bomb or other explosive device.

13. Upon information and belief, the bomb threat was made by a Union member and/or other non-union members acting in concert with the Union.

### Event 2 – Shots Fired at Maremont's Electrical System

14. At approximately 11:30 p.m. on February 20, 2007, assailants fired shots from a high powered rifle at the Maremont plant's electrical system. The assailants shot two electrical insulators, causing a fire and loss of electrical power to the plant. As a result of this conduct, the Maremont plant was forced to cease production until the electrical system was repaired.

15. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible for shooting the Maremont plant's electrical system.

### Event 3 – Arson of Richard Jenkins' Truck

16. Richard Jenkins returned to work at Maremont from layoff as an hourly manufacturing employee after the strike began. Mr. Jenkins elected not to participate in the strike and crosses the Union picket line daily to come to work.

17. On February 22, 2007, assailants torched Maremont employee Richard Jenkins' one-ton truck in front of his residence, resulting in total destruction of the vehicle.

18. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible for torching Mr. Jenkins' truck.

**Event 4 – Arson of Christi Palmer's House**

19. Christi Palmer is a salaried Maremont employee who is not a member of the bargaining unit. Ms. Palmer crosses the Union picket lines daily to come to work.

20. On February 23, 2007, assailants set Christi Palmer's house on fire, causing extensive damage.

21. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible for setting Ms. Palmer's house on fire.

**Event 5 – Shots Fired Into the Home of Mark Farner**

22. After the strike began, Maremont hired Mark Farner as a permanent replacement employee.

23. On March 3, 2007, at approximately 2:00 a.m., assailants fired shots into the home of Maremont employee Mark Farner. Two rounds struck the trailer, including one bullet which passed completely through the trailer into its kitchen area. Inside the residence at that time were Mr. Farner and his wife, both of whom work for Maremont, and their three young children. Also present and residing in the home were Maremont employees James Tinnell, Billie J. Tinnell, and Rita Cothran. Both Mr. Farner and Mr. Tinnell's vehicles were each struck by at least two rounds causing damage to the vehicles.

24. Mr. Tinnell, Ms. Tinnell and Ms. Cothran are also permanent replacement workers at Maremont.

25. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible firing shots into the Farner residence and the vehicles parked outside.

**Event 6 – Shots Fired at Maremont's Electrical Transformer**

26. On Saturday, March 3, 2007, at approximately 9:30 p.m., assailants fired two shots into the Maremont plant's electrical transformer with a high powered rifle, causing a fire, leakage of toxic fluids and complete loss of electricity to the plant. It took several days to replace the transformer and restore electricity, with a replacement cost, including labor, of approximately $125,000.00. In addition, Maremont lost two days of production and substantial revenue as a result of the felonious assault on its facility.

27. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible for shooting the plant's transformer.

**Event 7 – Michael Duggan Fired Projectiles at Maremont**

28. On March 7, 2007, striker and Union member, Michael Duggan, fired projectiles at the Maremont plant from the strikers' southern encampment with a makeshift cannon that uses a black powder substance as an explosive propellant. The City of Loudon Police Department witnessed the unlawful activity and immediately arrested Duggan, charging him with a felony.

**Event 8 – Shots Fired Into Glenn Johnson's Home**

29. After the strike began, Maremont hired Glenn Johnson as a permanent replacement employee.

30. On March 18, 2007, at approximately 10:00 p.m., assailants fired shots into the living room of the home of Maremont employee Glenn Johnson. Mr. Johnson and two of his relatives were inside the residence at the time of the shooting.

31. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible for shooting into Mr. Johnson's home.

**Event 9 – Shots Fired Into Faye Wilson's Home**

32. Faye Wilson is a hourly manufacturing employee at Maremont who elected not to strike and crosses the Union picket line on a daily basis to come to work.

33. On March 21, 2007, between 5:00 a.m. and 6:30 a.m., assailants fired shots into the home of Ms. Wilson. Ms. Wilson was inside the residence at the time the shots were fired.

34. Upon information and belief, Union members and non-union members acting in concert with the Union are responsible for shooting into Ms. Wilson's home.

**Attempted Murder**

35. 18 U.S.C. § 1961 (1) defines racketeering activity as "any act . . . involving murder. . ."

36. *Tenn. Code Ann. § 39-13-202* defines first degree murder as "(1) A premeditated and intentional killing of another; (2A a killing of another committed in the perpetration or attempt to perpetrate any first degree murder, act of terrorism, ... ; or (3) A killing of another committed as a result of the unlawful throwing, placing or discharging of a destructive device or bomb." *Tenn. Code Ann. § 39-13-210* defines second degree murder as "(1) A knowing killing of another ..."

37. Both first degree and second degree murder are punishable by more than one year imprisonment under Tennessee law.

38. *Tenn. Code Ann. § 39-12-101* states that "(a) A person commits criminal attempt who, acting with the kinds of culpability otherwise required for the offense: (3) acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part."

39. The facts set forth to describe Events 5, 7, 8 and 9 satisfy the elements of attempted murder. Upon information and belief, members of the Enterprise used deadly weapons either with intent or with knowledge that the actions could kill the victims.

**Threats of Murder**

40. 18 U.S.C. § 1961 (1) defines racketeering activity as "any act or threat involving murder. . ."

41. *Tenn. Code Ann. § 39-13-202* defines first degree murder as "(1) A premeditated and intentional killing of another; (2) A killing of another committed in the perpetration or attempt to perpetrate any first degree murder, act of terrorism, ... ; or (3) A killing of another committed as a result of the unlawful throwing, placing or discharging of a destructive device or bomb." *Tenn. Code Ann. § 39-13-210* defines second degree murder as "(1) A knowing killing of another ..."

42. Both first degree and second degree murder are punishable by more than one year imprisonment under Tennessee law.

43. The facts set forth to describe Events 1 constitute a threat of murder. Upon information and belief, members of the Enterprise threatened murder of Maremont employees by calling in the bomb threat.

**Arson**

44. 18 U.S.C. § 1961 (1) defines racketeering activity as "any act or threat involving. . .arson. . . ."

45. *Tenn. Code Ann. § 39-14-301* states that "a person commits an offense [of arson] who knowingly damages any structure by means of a fire or explosion without the consent of all persons who have a possessory, proprietary or security interest therein. . . ."

46. The facts set forth to describe Events 2, 3, 4 and 6 establish the elements of arson. In each incident, members of the Enterprise, upon information and belief, knowingly damaged structures by fire or explosion without the consent of the owners of the structures.

**Threat of Arson**

47. 18 U.S.C. § 1961 (1) defines racketeering activity as "any . . . threat involving. . . arson. . . ."

48. *Tenn. Code Ann. § 39-14-301* states that "a person commits an offense [of arson] who knowingly damages any structure by means of a fire or explosion without the consent of all persons who have a possessory, proprietary or security interest therein. . . ."

49. The facts set forth to describe Event 1 establish the elements of a threat of arson. Upon information and belief, a member of the Enterprise threatened to use an explosive device to damage Plaintiff's structure.

**THE "ENTERPRISE"**

50. Defendants have been and are currently associated with a "RICO Enterprise" to conduct, or participate in the conduct, of the Enterprise's affairs through a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5).

51. The RICO Enterprise consists of the Union, its business agents, officers, members, employees of Plaintiff who are on strike and individuals who are not Union members, including but not limited to family and friends of the striking workers, who support the strike. The Enterprise has the legitimate purpose of supporting protected labor activity. This Enterprise is an "association in fact" as defined by 18 U.S.C. § 1961(4).

52. The Enterprise is an ongoing organization directed by and controlled by the Defendants to perform the activities set forth herein on an ongoing and continuing basis. This Enterprise is separate and distinct from the Defendants.

53. The conduct described above is all related and perpetrated by the Enterprise described herein. The conduct is of a continuing nature and the Enterprise has threatened that it will continue for an indefinite period of time.

**COUNT I**
**(VIOLATION OF 18 U.S.C. § 1962(c))**

54. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55. The RICO Persons or Defendants are associated with the defined Enterprise. The members of the enterprise are associated in fact for the purpose terrorizing Maremont non-striking workers, permanent replacement employees, vendors, customers, and contractors to either cease working for Maremont or doing business with Maremont, with their ultimate purpose being to put the Maremont plant out of business. Furthermore, the members of the enterprise are associated in fact for the purpose of supporting the legitimate goals of the defendant unions by strike and picket activity, some of which is lawful and encouraged by the Defendants.

56. The conduct described above constitute predicate criminal acts for purposes of 18 U.S.C. § 1961(1).

57. The foregoing predicate acts include but are not limited to the following crimes defined under 18 U.S.C. § 1961(1), all of which are punishable by imprisonment for more than one year under Tennessee law:

a. Attempted murder

b. Threat of murder

c. Arson

d. Threat of Arson

58. To further its unlawful purpose, the Defendants have conducted or participated in the conduct of the Enterprise's affairs through a pattern of "racketeering activity" as defined in 18 U.S.C. §1961(1). These acts constitute a pattern of racketeering activity in that they demonstrate continuity over a period of time and a relationship among the various acts.

59. The RICO Defendants have affected interstate commerce by attempting to prevent Plaintiff from conducting its business which includes distributing goods in interstate commerce.

60. The RICO Defendants' predicate acts pose a continuing threat to the Plaintiff of open-ended criminal activity all for the purpose of putting Plaintiff out of business or harming Plaintiff's business reputation. The acts have been committed at the direction of or with the blessing of the Defendants. Certain Defendants have threatened that the conduct will continue for an indefinite period of time until the Maremont plant is out of business.

61. Plaintiff has been injured in its business and property by reason of the RICO violations. The damages sustained are undetermined because the unlawful acts are continuing. Plaintiff's damages include damage to property, loss of revenue and extraordinary measures taken by Plaintiff to prevent future damage. Additional damages include lost time and medical expenses of injured employees, damage to the property of Plaintiff's employees and customers for which Plaintiff has provided compensation, loss of business and increased administrative costs and legal fees. Plaintiff's damages in the aggregate total in excess of $1,000,000.00.

62. Plaintiff is entitled to recover treble damages it has sustained and the costs of this suit, including reasonable attorneys' fees.

WHEREFORE, Plaintiff prays that the Court:

A. Award compensatory damages to Plaintiff in an amount to be proven at trial;

B. Treble this amount under the provisions of 18 U.S.C. § 1964(c);

C. In the alternative to an award of treble damages, award Plaintiff punitive damages in an amount to be proven at trial;

D. Award Plaintiff all attorney fees and costs incurred in prosecuting this action; and

E. Grant such other and further relief as the Court deems equitable, just, and proper.

DATED this 6th day of April, 2007.

Respectfully submitted,

Michael S. Moschel

Michael Kelley (BPR #14378) by perm. AWMc
Matthew Scoggins (BPR #23126)
BASS, BERRY & SIMS PLC
900 S. Gay Street, Suite 1700
Knoxville, Tennessee 37919
Telephone: (865) 521-6200
Facsimile: (866) 292-2836

Michael S. Moschel (BPR #16826)
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, Tennessee 37238
Telephone: (615) 742-6200
Facsimile: (615) 742-0417

*Attorneys for Plaintiff, International Muffler Company d/b/a Maremont*